THE STATE OF OHIO, APPELLANT, *v.* HASSLER, APPELLEE.

[Cite as *State v. Hassler,* 115 Ohio St.3d 322, 2007-Ohio-4947.]

(No. 2006–1517—Submitted May 24, 2007—Decided September 27, 2007.)

O'CONNOR, J.

{¶ 1} Nearly 20 years ago, in *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130, we held that under the prior version of R.C. 4511.19(A)(1), "the results of a properly administered bodily substances test * * * may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation." Id. at paragraph two of the syllabus. According to one of the appellate judges on the panel that decided this present case, our recent decision in *State v. Mayl,* 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, has cast doubt over the continuing validity of *Lucas.* See *State v. Hassler,* 5th Dist. No. 05 CAA11 0078, 2006-Ohio-3397, 2006 WL 1814336, ¶ 52 (Hoffman, P.J., concurring). This concern is unwarranted and is based on a misreading of *State v. Mayl.*

{¶ 2} The issue confronting us is whether, in light of *Mayl,* a blood sample taken outside the two-hour window set forth in R.C. 4511.19(D) is admissible in a prosecution for a violation of R.C. 2903.06 (vehicular homicide) that alleges a violation of R.C. 4511.19(A) (driving while intoxicated). For the reasons that

follow, we hold that a blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person was under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) in the prosecution for a violation of R.C. 2903.06, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered.

## Relevant Background

{¶ 3} A January 12, 2005 one-car accident resulted in the death of Leondra Mayo. Appellee, Michael Hassler, was taken to the hospital, where police questioned him. His demeanor suggested to the police that he was intoxicated, but Hassler declined to provide a blood sample, and the parties stipulated that at least seven hours later, police obtained blood samples pursuant to a search warrant.

{¶ 4} On March 25, 2005, the Delaware County Grand Jury returned an indictment against Hassler, charging him with violating R.C. 2903.06(A)(1)(a), aggravated vehicular homicide. The count alleges that he caused the death of Mayo by committing a violation of R.C. 4511.19(A), which prohibits operating a vehicle while under the influence of alcohol.

{¶ 5} Hassler filed a motion to suppress the results of his blood-alcohol test, based in part on the fact that his blood was drawn for testing outside the two-hour time frame laid out in a former version of R.C. 4511.19(D)(1).[1] See Am.Sub.S.B. No. 163, 149 Ohio Laws, Part II, 3553, 3577 ("S.B. 163"). Following a hearing on Hassler's motion held on November 10, 2005, the trial court granted the motion in a judgment entry dated November 21, 2005. In granting the motion, the trial court ruled that for the test results to be admissible pursuant to *Mayl*, the test had to be performed within two hours of the incident.

{¶ 6} The state appealed the trial court's order to the Fifth District Court of Appeals. The appellate court affirmed the trial court's judgment. We accepted jurisdiction over the state's discretionary appeal, which asks us to determine the following: whether in a prosecution for aggravated vehicular homicide that alleges driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a blood sample taken outside the time limit in R.C. 4511.19(D) is admissible when the administrative requirements are substantially complied with and expert testimony is offered.

## Analysis

{¶ 7} We begin our analysis with R.C. 4511.19. The General Assembly amended certain portions of that statute in 2006 to allow admissibility of testing

---

1. R.C. 4511.19(D)(1)(b) now provides a three-hour window.

obtained within three hours of the alleged violation, but former R.C. 4511.19(D)(1) was otherwise similar to the current version. It provided: "In any criminal prosecution * * * for a violation of division (A) * * * of this section * * * the court may admit evidence on the concentration of alcohol * * * in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation." S.B. 163.

{¶ 8} In *Lucas*, we were confronted with a situation similar to the one sub judice. Lucas had been charged with a violation of Section 434.01(a)(1) of the Newark Codified Ordinances, which proscribes operating a vehicle while under the influence of alcohol. The alleged violation occurred at 2:51 a.m., yet Lucas's blood was not withdrawn for blood-alcohol tests until 5:30 a.m.

{¶ 9} The Newark ordinance and R.C. 4511.19 contained the same two-hour time limit. Because Lucas's blood was taken after the two-hour limit specified in the ordinance, Lucas filed a motion to suppress the evidence, which the trial court granted. The appellate court affirmed.

{¶ 10} In reviewing Lucas's case, we first noted that in 1983, the General Assembly had amended R.C. 4511.19 to make "it illegal to operate a vehicle not only while under the influence of alcohol, but also with a proscribed level of alcohol content in one's blood, breath, or urine." *Lucas*, 40 Ohio St.3d at 103, 532 N.E.2d 130. The effect of the General Assembly's amendment was to divide R.C. 4511.19 into two classification of offenses: the offense of operating a vehicle while under the influence, and the "per se" offense.[2]

{¶ 11} We affirmed the judgment of the court of appeals as to the motion to suppress regarding the per se violation. But we held that in prosecutions for violations of driving while impaired, "the behavior of the defendant * * * is the crucial issue. The accuracy of the test is not the critical issue as it is in prosecutions for *per se* violations." *Lucas*, 40 Ohio St.3d at 104, 532 N.E.2d 130. We therefore concluded that because the test "results [were] not dispositive to a determination of innocence or guilt * * *, the fact that a bodily substance is withdrawn more than two hours after the time of the alleged violation does not, by itself, diminish the probative value of the test results in an R.C. 4511.19(A)(1) prosecution." Id. Based on these principles, we held that "the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was

---

2. Per se offenses make the blood-alcohol content an element of the offense. The trier of fact must find only "that the defendant operated a vehicle * * * and that the defendant's chemical test reading was at the proscribed level." *Lucas*, 40 Ohio St.3d at 103, 532 N.E.2d 130.

withdrawn more than two hours from the time of the alleged violation." Id. at 105, 532 N.E.2d 130.

{¶ 12} Our recent decision in *Mayl* complements the *Lucas* holding. In *Mayl*, the defendant, who had been hospitalized after an accident, had had his blood drawn for medical reasons by nurses who, though perhaps qualified for permits under administrative regulations by the Ohio Department of Health ("ODH"), had not obtained them. Mayl, who was then charged with a violation of R.C. 2903.06(A)(1) because the victim's death had been the "proximate result of committing a violation of [R.C. 4511.19(A) ]," moved to suppress his blood-alcohol test because "it did not comply with ODH requirements." *Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 5–6.

{¶ 13} Mayl contended that "the regulations pertaining to 'standards of observations, qualifications of personnel,' and other provisions relating to 'the taking and keeping of blood samples' were violated." Id. at ¶ 6. The state countered that the requirements of R.C. 4511.19(D) were inapplicable because the test was done "at the request of hospital staff as part of his medical treatment" and not for law-enforcement purposes. Id. at ¶ 53. The trial court denied the motion, and after the appellate court reversed the trial court's judgment, we affirmed the judgment of the court of appeals.

{¶ 14} The majority in *Mayl* held that despite the reliability of blood tests taken according to medical standards, in law-enforcement contexts, the law nevertheless requires the state to show substantial compliance with ODH regulations in vehicular-homicide cases. Id. at ¶ 55.

{¶ 15} As outlined above, *Lucas* and *Mayl* deal with two distinct issues. *Lucas* focused on the two-hour window prescribed in the statute, while *Mayl* addresses the nature of substantial compliance with the ODH regulations. In fact, like *Lucas* before it, *Mayl* acknowledges that the purpose of substantial compliance with the ODH regulations is "to ensure the accuracy of bodily substance test results," *Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 40; cf. *Lucas,* 40 Ohio St.3d at 103, 532 N.E.2d 130. The time frame at issue here does not by itself implicate the accuracy of the test results. The substantial-compliance component of *Mayl,* therefore, does not overrule *Lucas.*

{¶ 16} Furthermore, since *Lucas* was decided in 1988, the General Assembly has amended R.C. 4511.19(D) no fewer than eight times.[3] At no point in enacting those previous eight amendments has the legislature rewritten or shown any

---

3. Am.Sub.S.B. No. 82, 145 Ohio Laws, Part I, 879, 928–929; Am.Sub.S.B. No. 22, 148 Ohio Laws, Part IV, 8353, 8406; Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2959; Am.Sub.S.B. No. 163, 149 Ohio Laws, Part II, 3553, 3577; 2003 Am.Sub.H.B. No. 87, effective June 30, 2003; 2003 Am.Sub.H.B. No. 163, effective September 23, 2004; 2005 Sub.S.B. No. 8, effective August 17, 2006; 2006 Am.Sub.H.B. No. 461, effective April 4, 2007.

intent to supersede our holding in *Lucas.* When the legislature amends an existing statute, the presumption is that it is aware of our decisions interpreting it. *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 278, 744 N.E.2d 719.

{¶ 17} Consequently, case law interpreting this statute, including *Lucas*'s distinction between per se and under-the-influence offenses, was incorporated into R.C. 2903.06(A)(1)(a). Cf. *State v. Cichon* (1980), 61 Ohio St.2d 181, 183–184, 15 O.O.3d 209, 399 N.E.2d 1259. Moreover, as discussed above, our decision in *Mayl* did not eviscerate *Lucas*'s rationale. Thus, *Lucas* remains the law.

{¶ 18} Because the state prosecuted Hassler for a violation of R.C. 2903.06(A)(1)(a) and alleged a violation of driving under the influence pursuant to R.C. 4511.19(A), "[t]he test results, if probative, are merely considered in addition to all other evidence of impaired driving * * *." *Lucas,* 40 Ohio St.3d at 104, 532 N.E.2d 130. The fact that Hassler's blood was withdrawn more than two hours after the incident does not bar the admission of the evidence, assuming the state can satisfy the standard enunciated in *Mayl.*

## Conclusion

{¶ 19} For the foregoing reasons, we hold that a blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) in a prosecution for a violation of R.C. 2903.06, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered. We therefore reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and O'DONNELL, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 20} I am not unsympathetic to the end result in this case: a more severe punishment than if we held that the blood sample was inadmissible as evidence because it was taken outside the time limit established in former R.C. 4511.19. See Am.Sub.S.B. No. 163, 149 Ohio Laws, Part II, 3553, 3577. But the unfortunate truth is that the blood sample was taken after a time lapse more than three times longer than allowed by former R.C. 4511.19, which provided that blood samples had to be "withdrawn within two hours of the time of the alleged

violation." That this court at one time allowed the admission of a test based on a sample withdrawn two and a half hours after the alleged violation does not require us to allow the admission of a test based on a sample withdrawn seven hours after the alleged violation. See *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130.

{¶ 21} The General Assembly must have had a reason for including a bright-line standard in R.C. 4511.19. I suggest that the General Assembly is aware that most people in the state know to a reasonable degree of certainty the level of blood alcohol that constitutes a statutory violation and that the General Assembly didn't want that general knowledge of a per se violation to taint jurors' consideration of an under-the-influence offense. The court's holding today is contrary to the plain language of R.C. 4511.19, defeats whatever purpose the General Assembly had in supplying a hard time limit, and appears to be based on little more than "we did something similar once before." I dissent and would hold that the test results were inadmissible because the sample was taken more than two hours after the alleged violation.

MOYER, C.J., concurs in the foregoing opinion.

---

**O'DONNELL, J., dissenting.**

{¶ 22} Respectfully, I dissent.

{¶ 23} In my view, this case presents a straightforward issue of statutory construction. This court's purpose in construing statutes is to "ascertain and give effect to the legislative intent." *Carter v. Youngstown Div. of Water* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus.

{¶ 24} The relevant version of 4511.19(D)(2) stated: "In a criminal prosecution * * * for a violation of division (A) of this section or for an equivalent offense, if there was at the time the bodily substance was withdrawn a concentration of less than the applicable concentration of alcohol specified in divisions (A)(2), (3), (4), and (5) of this section, that fact may be considered with other competent evidence in determining the guilt or innocence of the defendant." Am.Sub.S.B. No. 163, 149 Ohio Laws, Part II, 3553, 3577 ("S.B. 163"). That provision, however, must be read in pari materia with the rest of R.C. 4511.19, which sets forth the requirements for chemical analysis of bodily substances in the context of prosecutions for driving while under the influence of alcohol. See *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 47, citing *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146–02, W. End Blight Designation v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 20 (statutory provisions relating to the same subject matter must be construed in pari materia and harmonized so as to give them full effect).

{¶ 25} The relevant version of R.C. 4511.19(D)(1) provided: "In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * * the court may admit evidence on the concentration of alcohol * * * in the defendant's whole blood, blood serum or plasma * * * as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation." S.B. 163.

{¶ 26} It is my view that we read these sections in pari materia in order to determine the meaning of the General Assembly. Hence, the time limit for the extraction of the bodily substance specified in R.C. 4511.19(D)(1) applies to the provisions of R.C. 4511.19(D)(2) in the context of R.C. 4511.19(A) offenses.

{¶ 27} It is true that this court refused to read an earlier version of this statute in an exclusionary manner in the context of R.C. 4511.19(A)(1) prosecutions, holding that "[i]n a criminal prosecution for violation of R.C. 4511.19(A)(1), * * * the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation." *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130, paragraph two of the syllabus. However, in *Newark*, the tested blood had been withdrawn two hours and 39 minutes after the automobile accident—at least arguably in substantial compliance with the statute.

{¶ 28} Here, in contrast, the parties stipulated that the blood sample was extracted more than seven hours after the offense occurred. My departure from the majority view in this case is a purely factual one. Under no circumstances could a sample withdrawn seven to eight hours after an alleged violation constitute either actual or substantial compliance with the time requirement set forth in the applicable version of R.C. 4511.19(D)(1).

{¶ 29} This case arose at a time when an earlier version of R.C. 4511.19 controlled the admissibility of the results of tests performed upon a sample of an alleged violator's blood, breath, urine, or other bodily substance after the occurrence of an alleged violation. While the legislature has amended R.C. 4511.19, it is telling from my point of view that the legislature has now imposed a three-hour period and used the term "limit" to express its intent that there be some degree of urgency in extracting a blood sample from a defendant. See 2005 Sub.S.B. No. 8, effective August 17, 2006. Thus, even under the current version of the statute, nothing approximates the seven to eight hours that elapsed between the accident and the blood draw in this case.

{¶ 30} Although the majority baldly concludes that "[t]he time frame at issue here does not by itself implicate the accuracy of the test results," nonetheless, the General Assembly has incorporated a time limit for the extraction of bodily

substances from alleged violators of both divisions (A) and (B) of the applicable version of R.C. 4511.19 and in its recently enacted version of this statute.

{¶ 31} I would hold that the state failed to comply with the statutory directive to timely withdraw the blood sample from Hassler for chemical analysis, and therefore, this evidence should not be admitted at trial, as the statute does not authorize its admission into evidence. Accordingly, I dissent.

---

David A. Yost, Delaware County Prosecuting Attorney, and Paul Scarsella, Assistant Prosecuting Attorney, for appellant.

Anthony M. Heald, for appellee.